# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PABLO RIVERA, ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | **CIVIL ACTION** |
| ) | **NO. 12-40066-TSH** |
| CITY OF WORCESTER, et al., ) | |
| Defendants. ) | |
| ) | |

# ORDER

## June 17, 2014

Hennessy, M.J.

      By Order of Reference dated February 14, 2014, pursuant to 28 U.S.C. § 636(b)(1)(A) (Docket #73), this matter was referred to me for a ruling on Plaintiff Pablo Rivera's Motion to Preclude Opinion Testimony of Detective Daniel Rosario and Lieutenant John Towns (Docket #62). Defendants have filed a response to this motion. (Docket #70). A hearing on the motion was held on March 31, 2014. The motion, as it pertains to the testimony of Detective Rosario was denied as moot. (Docket 81). With respect to the motion as it relates to Lieutenant Towns, the Court held the motion in abeyance until the parties provided additional documentation. (Id.). Specifically, the Court ordered Defendants to set forth the exact opinion testimony that Lieutenant Towns will provide as well as his qualifications to give that opinion, and for Rivera to respond with any objections he has to Lieutenant Towns' testimony as an expert. (Id.). On April 14, 2014, Defendants provided a supplement to their opposition to the motion and the affidavit of Lieutenant Towns. (Dockets # 82, 82-1). On April 23, 2014, Rivera filed his objections.

(Docket #83). This matter is now ripe for adjudication. For the following reasons, the Motion to Preclude Opinion Testimony of Lieutenant John Towns is DENIED.

I.  BACKGROUND

On May 8, 2010, an armed robbery took place at a Honey Farms Store in Worcester Massachusetts. (Docket #18 at ¶ 7). Following an investigation into the incident by the Worcester Police Department ("WPD"), still photographs of the perpetrator were taken from the store's surveillance system and posted in the police station so members of the WPD could aid in identifying the suspect. (Id. at ¶ 13). Rivera is approximately 5' 9" tall. (Id. at ¶ 24). The victim of the robbery told investigators that the suspect was approximately 4' 11". (Id. at ¶ 20). Defendant Detective Richard Burgos, Defendant Detective James O'Rourke, and Defendant Officer Francis Bartley each viewed the photograph displayed in the police station. (Id. at ¶¶ 14-17). Detective Burgos identified the suspect in the photograph as Rivera. (Id. at ¶ 14). Detective O'Rourke and Officer Bartley also confirmed that the suspect was Rivera but only after a side-by-side comparison with a photograph of Rivera already on file. (Id. at ¶¶ 16-17). As a result of these identifications, Detective Bartley applied for an arrest warrant for Rivera which was subsequently issued by the Worcester District Court. (Docket #88 at ¶ 13). Rivera was subsequently arrested. (Docket #18 at ¶ 26).

Rivera filed this action in the Superior Court of Worcester County on February 6, 2012. (Docket #3-2). On May 12, 2012, Rivera filed an amended complaint asserting claims of false imprisonment, negligence, failure to supervise and/or failure to train, and violations of his civil rights under 42 U.S.C. § 1983 against Defendants.[1] (Docket #3-10). Rivera alleges that he was wrongfully arrested by the WPD for an armed robbery and, as a result, was held in custody for

---

[1] On November 14, 2012, Rivera filed a second amended complaint in order to plead his allegations of negligence with sufficient detail. (Docket #18).

2

approximately eight months until the Worcester County District Attorney dismissed the prosecution against Rivera. (Id.). Defendants removed the action to this Court on May 25, 2012. (Docket #1).

Defendants have disclosed Lieutenant Towns as a hybrid fact/expert witness. Lieutenant Towns seeks to offer the following three opinions:

> 1. An initial statement made by the store clerk at the Honey Farms Store on May 8, 2010 that the perpetrator was four feet eleven inches tall was not credible, as victims of violent crime are typically not very accurate in their initial description of a perpetrator. (Docket #82-1 at ¶ 8).
>
> 2. The identification of Rivera by Detective Burgos and Detective O'Rourke, who had extensive familiarity with Rivera, was properly given considerable weight by Bartley, who completed the application for the arrest warrant for Rivera. (Docket #82-1 at ¶ 10).
>
> 3. All available evidence was taken into account and properly considered and used in the arrest warrant for Rivera, and, therefore, the arrest warrant for Rivera was reasonable and warranted under all of the circumstances facing Officer Bartley. (Docket #82-1 at ¶ 11).

II. STANDARD

The admission of expert evidence is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

3

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court asserted that "trial courts perform a gatekeeping role in regulating the admission of expert testimony under Federal Rule of Evidence 702." United States v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002) (citing Daubert, 509 U.S. at 589-95). This screening function, which applies to all expert testimony, not just such testimony by "scientific" experts, requires the trial court to undertake a preliminary evaluation of the proffered expert testimony to "determine whether the expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand' and whether the expert is qualified." United States v. Monteiro, 407 F. Supp. 2d 351, 356 (D. Mass. 2006) (quoting Daubert, 509 U.S. at 597); see Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (holding that trial court's gatekeeping role under Federal Rule of Evidence 702 applies to all expert testimony, not just scientific expert testimony). "Vigilant exercise of this gatekeeper role is critical because of the latitude given to expert witnesses to express their opinions on matters about which they have no firsthand knowledge, and because an expert's testimony may be given substantial weight by the jury due to the expert's background and approach." Natchitoches Parish Hosp. Dist. v. Tyco Int'l, LTD., No. 05-12024-PBS, 2009 U.S. Dist. LEXIS 86435, at *6 (D. Mass. Sept. 21, 2009).

To fulfill this gatekeeping role, the trial court must first determine whether the proffered expert testimony is sufficiently reliable to be admitted. Monteiro, 407 F. Supp. 2d at 356-57. When evaluating the reliability of scientific expert opinion, the trial court must make a determination of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. In Daubert, the Supreme Court listed four factors that may assist the trial courts in this determination: "(1) whether the theory or technique can be

4

and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002). These factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho, 526 U.S. at 150. Although the trial court must exercise the gatekeeping role with respect to all expert evidence, the way that role is exercised will necessarily vary depending on the type of testimony at issue. Monteiro, 407 F. Supp. 2d at 357; see United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) ("Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission."). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note. "[T]estimony based on experience must rest on a reliable foundation[;] [t]he critical inquiry is whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Monteiro, 407 F. Supp. 2d at 357 (quoting Kumho Tire, 526 U.S. at 156).

Once the court determines that the general methodology underlying the expert's proposed testimony is sufficiently reliable, it must ensure that the witness is qualified to offer an expert opinion. Monteiro, 407 F. Supp. 2d at 357. If the court determines that the expert is qualified, the court must then determine "whether those principles and methods have been properly applied to the facts of the case." Fed. R. Evid. 702 advisory committee's note.

III.  ANALYSIS

Rivera argues that Lieutenant Towns' testimony is inadmissible as expert testimony because it does not satisfy the requirements of Federal Rule of Evidence 702 and the <u>Daubert</u> rules governing the application of Rule 702.  Specifically, Rivera asserts that Lieutenant Towns is not qualified as an expert in police procedures.  (Docket #62-1 at 4; Docket #83 at 2).  Rivera also challenges Lieutenant Towns' third opinion as not sufficiently reliable.  (Docket #83 at 1-2).

Rivera asserts that Lieutenant Towns has no independent opinion and does not consider himself as an expert in police procedures and, therefore, is unqualified to offer an expert opinion on police procedures.  (Docket #62-1 at 3-4).  In support of his argument, Rivera cites to the following excerpts of deposition testimony given by Lieutenant Towns concerning the basis of his qualifications:

> A.  Twenty years of experience, common sense.  I know criminal law very well.  I know police procedure very well.  I'm not a lawyer, but I do know it more than most, you know, the lay people, police officers so much so that not that it's my opinion but the department's opinion that I'm the best one suited to teach new police officers and to do inservice, so they ask me to do it.

(Docket #62-6 at 2).

> Q.  But you do pass yourself off as an expert in police procedures; correct?
>
> A.  I don't pass [Objection] myself off as anything.  I've been asked and I said yeah, I'll be happy to accommodate you.
>
> Q.  Okay.  Try to answer my question.  Do you consider yourself an expert in police procedures?
>
> . . .
>
> A.  I feel that I know criminal law and criminal procedure better than most police officers.

(Docket #62-7 at 2-3).

"A law enforcement officer's testimony satisfies the Daubert reliability requirement if the officer is qualified by training and experience to offer an opinion." United States v. Motsenbocker, No. CR-10-371-D, 2011 U.S. Dist. LEXIS 26550, at *5 (W.D. Okla. Mar. 15, 2011) (citing United States v. Garza, 566 F.3d 1194, 1199 (10th Cir. 2009)); see Thomas v. City of Chattanooga, 398 F.3d 426, 432 (6th Cir. 2005) ("An expert may certainly rely on his experience in making conclusions, particularly in this context where an expert is asked to opine about police behavior."); United States v. Pulido, No. 10-CR-186-CVE, 2011 U.S. Dist. LEXIS 10877, at *38 (N.D. Okla. Feb. 3, 2011) (quoting United States v. Diaz, 356 Fed. Appx. 117, 126-27 (10th Cir. 2007)) ("[T]he reliability of officer testimony can be 'safely inferred from the breadth of [the] individual[']s training and experience."). Lieutenant Towns has been employed with the WPD for twenty years. (Docket #82-1 at ¶ 3). He has a bachelor's degree in mathematics and a master's degree in criminal justice. (Id. at ¶ 2). In February of 2009, he achieved the rank of lieutenant and has served in that capacity in the Detective Bureau where he supervises Defendant Detective James O'Rourke and Defendant Detective Francis Bartley. (Id. at ¶ 3). Lieutenant Towns has been a Worcester Police Academy instructor since 2003 for such courses as constitutional law, criminal law, interview and interrogation, investigative techniques, and juvenile issues. (Id. at ¶¶ 3-4). He also has provided constitutional law updates for WPD in-service for several years. (Id. at ¶ 4). Further, Lieutenant Towns has taken a number of week-long seminars in criminal law and constitutional law. (Id.). The Court finds that Lieutenant Towns is qualified by training and experience to offer his proposed expert opinion. Lieutenant Towns' deposition testimony does nothing to alter this conclusion. Although Lieutenant Towns does not affirmatively label himself an expert, he clearly indicates that he possesses the experience an expert in this field requires.

Rivera also argues that Lieutenant Towns should be precluded from testifying as to his third opinion. Rivera argues that not all relevant evidence was taken into account and properly considered and used in the arrest warrant as there was no attempt to retrieve fingerprints from the scene for comparative purposes nor did the police utilize any type of identification procedure other than review of still photos from the crime scene. (Docket #83 at 2-3). As to the necessity of obtaining fingerprints, Lieutenant Towns stated that it was not clear that the perpetrator of the robbery touched an isolated surface in the store and it would not have been practical to take samples from a counter surface at a convenience store that has been touched by many people over an extended period of time. (Docket #82-1 at ¶ 9). Hence, Lieutenant Towns concluded that it was not necessary to test the scene for fingerprints. (Id.). As to the need to use additional identification procedures, Lieutenant Towns stated that Rivera was identified by two police officers with extensive familiarity with Rivera. (Id. at ¶ 10).

Rivera challenges these assertions, stating that the perpetrator touched the counter and grabbed the cash drawer with his hands. (Docket #83 at 1). Rivera also argues that the WPD should have undertaken additional identification procedures such as a line-up, show-up, field identification, voice identification, single photo show-up, or photo array. (Id. at 2). However,

> Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. As long as an expert's [] testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process – competing expert testimony and active cross-examination – rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998) (quoting Daubert, 509 U.S. at 590)). The Court finds that Lieutenant Towns' testimony is sufficiently

reliable to be admitted. Rivera may test Lieutenant Towns' expert testimony via the adversarial process.

IV. CONCLUSION

For the foregoing reasons, the Motion to Preclude Opinion Testimony of Lieutenant John Towns (Docket #62) is hereby DENIED.

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE