UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PABLO RIVERA ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | NO. 12-40066-TSH |
| CITY OF WORCESTER, RICHARD BURGOS,) individually and in his official capacity as a ) police officer in the City of Worcester, JAMES ) O'ROURKE, individually and in his official ) capacity as a police officer in the City of ) Worcester, FRANCIS BARTLEY, individually ) and in his official capacity as a police officer in ) the City of Worcester, and GARY J. GEMME, ) individually and in his official capacity as the ) Police Chief in the City of Worcester, ) ) Defendants. ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 86)**

**February 18, 2015**

This action arises out of the arrest and nine-month imprisonment of Plaintiff Pablo Rivera ("Plaintiff") for the armed robbery of a convenience store in Worcester, Massachusetts. The Worcester County District Attorney's office ultimately chose not to prosecute Plaintiff for the crime. Upon his release, Plaintiff filed this civil action, alleging that he was falsely arrested by the Worcester police. The complaint asserts claims for false imprisonment against Officers Richard Burgos, James O'Rourke, and Francis Bartley (Count I), negligence against the City of Worcester (Count II), failure to supervise and/or failure to train against the City of Worcester and Police Chief Gary J. Gemme (Count III), and deprivations of Plaintiff's constitutional rights

1

under 42 U.S.C. § 1983 against all defendants. Defendants have moved for summary judgment on all counts. For the reasons set forth below, Defendants' motion for summary judgment is ***granted***.

**Background**

In the early morning hours of May 8, 2010, an individual entered the Honey Farms convenience store located at 64 Vernon Street in Worcester, Massachusetts. Wielding a knife, he confronted the store clerk and took everything from the store's cash drawer. The store clerk, Donald Sutton Jr., reported the armed robbery to the police and initially described the individual as wearing a black hooded sweatshirt and 4'11" tall. Officer Jesus Candelaria was dispatched to the scene around 4:50 am. Based on Sutton's statements and review of the store's surveillance video, Candelaria developed a description of the perpetrator to be sent out over police radio. The suspect was a Hispanic male in his thirties with a medium complexion and chin-strap beard, was wearing a black hooded sweater, black baseball hat, black peacoat-like jacket, and was carrying a folding knife approximately four inches long. Candelaria sent the description out over the police dispatch system as a "be on the lookout" ("BOLO") announcement, but did not include Sutton's original estimate that the perpetrator was only 4'11" tall.

The perpetrator was not apprehended that day, and the case was assigned to Defendant Francis Bartley, a detective with the Worcester Police Department (WPD). Bartley sent an email through the WPD system with still pictures of the perpetrator taken from the surveillance video, asking for assistance in identifying the individual. Defendant Burgos and his partner Defendant O'Rourke—also detectives with the WPD—reviewed the photos and, on May 20, 2010, positively identified Plaintiff Pablo Rivera as the individual in the surveillance video. The identification was based on their familiarity with Plaintiff over several years of work with him as

2

a confidential informant. Burgos and O'Rourke first met the Plaintiff over ten years ago when the Plaintiff had agreed to provide them with information. Officer Burgos came to know Plaintiff on a personal level, spoke with Plaintiff about his family and drug habits, and tried to help Plaintiff "get away from the criminal life." Burgos Dep. 7:22-8:2.

Bartley then compared the surveillance stills with WPD file photos of Plaintiff to confirm Burgos and O'Rourke's identification. Upon review, Bartley was positive that Plaintiff was the individual in the surveillance video. Based on the statements of Officers Burgos and O'Rourke, as well as his own identification, Bartley applied for an arrest warrant. A neutral clerk-magistrate in Worcester District Court found probable cause for the warrant to issue on June 3, 2010. Plaintiff was arrested on June 7, 2010.

The Plaintiff is 5'8" tall. He told the arresting officers that he was innocent and had not committed any crimes on May 8, 2010. After being held on a high bail, he appeared in Worcester Superior Court on June 16, 2010 for a bail review hearing arguing that he was not the person depicted in the surveillance video. The Superior Court judge was shown a still photo from the video, remarked "[l]ooks like a pretty good picture to me," and increased Plaintiff's bail from $2,500 to $10,000. Plaintiff was indicted on August 20, 2010. In November 2010, Plaintiff filed a motion to dismiss the indictment; the Superior Court denied the motion, concluding that sufficient evidence supported the indictment. However, on the eve of trial, the Assistant District Attorney in charge of the prosecution chose not to proceed with the case, and filed a *nolle prosequi* on March 11, 2011.

Upon his release, Plaintiff filed this action against Defendants Bartley, Burgos, O'Rourke, Gemme and the City of Worcester. Plaintiff asserts that the officers should have investigated certain discrepancies between his physical features and those of the perpetrator.

3

Specifically, Plaintiff cites the officers' failure to credit Sutton's statement that the perpetrator was only 4'11," notice a tattoo on the perpetrator's hand in the surveillance video, test for fingerprints and conduct a lineup or photo array. According to Plaintiff, the failure to take these steps led to Plaintiff's false arrest and nine-month imprisonment, and amounts to actionable torts and violations of Plaintiff's constitutional rights. Defendants have moved for summary judgment on all counts.

## Discussion

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that a district court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-moving party. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1968). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 4). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into

dispute. *See Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex*, 477 U.S. at 325). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002). However, the court should not "credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).

### *Counts III and IV: § 1983 Claims against all Defendants*

Counts III and IV assert claims against all defendants for violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983. Count III alleges that the City of Worcester and Police Chief Gary Gemme failed to supervise and/or train the city's police officers.[1] Count IV asserts that Officers Bartley, Burgos, and O'Rourke are individually liable for damages relating to Plaintiff's arrest, and that the City of Worcester and Chief Gemme are municipally liable. A valid § 1983 claim has two essential elements: "the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). There is no dispute that the officers in this case acted under the color of state law. Instead, the § 1983 claims hinge on Plaintiff's assertion that his arrest was an unreasonable seizure in violation of his rights secured by the Fourth Amendment of the U.S. Constitution, as applied to the states through the Fourteenth Amendment.[2]

---

[1] Count III does not specify a cause of action or allege a common law tort, but is simply styled as "Failure to Supervise and/or Failure to Train by City of Worcester and Police Chief Gary J. Gemme." The Court interprets this count as a claim brought under 42 U.S.C. 1983. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct.1197 (1989) (holding that a failure to train police officers can give rise to municipal liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of citizens).

[2] The complaint asserts that the Defendants are liable under § 1983 for violating Plaintiff's "right under the Fourth Amendment of the United State [sic] Constitution to be free from unreasonable arrest and his right under the Fourteenth Amendment of the United States Constitution to due process of law." Pl.'s Second Am. Compl. ¶ 49.

An arrest does not run afoul of the Fourth Amendment's prohibition on unreasonable seizures as long as it is supported by probable cause. *U.S. v. McFarlane*, 491 F.3d 53, 56 (1st Cir. 2007). "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *U.S. v. Burhoe*, 409 F.3d 5, 10 (1st Cir. 2005) (quoting *U.S. v. Young*, 105 F.3d 1, 6 (1st Cir. 1997)). It is a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Burhoe*, 409 F.3d at 10 (alterations in original) (quoting *Ornelas v. U.S.*, 517 U.S. 690, 699, 116 S.Ct. 1657 (1996)). The probable cause inquiry is "based on the facts and circumstances known at the time of arrest rather than in hindsight." *Burke v. Town of Walpole*, 405 F.3d 66, 80 (1st Cir. 2005). An officer "who asserts the existence of probable cause is not a guarantor either of the accuracy of the information upon which he has reasonably relied or of the ultimate conclusion that he reasonably drew therefrom." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 255 (1st Cir. 1996).

In cases where, as here, officers obtained a warrant based on probable cause *prior* to arresting the suspect, "[a] Fourth Amendment violation may be established if [the plaintiff] can show that officers acted in reckless disregard, with a 'high degree of awareness of [the] probable falsity'" of statements made in support of an arrest warrant. *Forest v. Pawtucket Police Dep't*, 377 F.3d 52, 58 (1st Cir. 2004) (citation omitted), *cert. denied*, 543 U.S. 1149, 125 S.Ct. 1315, (2005). The reckless disregard standard includes "the intentional or reckless omission of material

---

However, the complaint does not allege, nor does the record reveal, facts giving rise to a due process claim independent of the Fourth Amendment claim. Therefore, the Court interprets the complaint's reference to the Fourteenth Amendment merely as the vehicle by which Plaintiff asserts his Fourth Amendment rights against state officials. *See Ringuette v. City of Fall River*, 146 F.3d 1, 4 (1st Cir. 1998) (observing that the Fourth Amendment constrains state officers "only by 'incorporation' of Fourth Amendment standards into the Fourteenth Amendment").

exculpatory facts from information presented to a magistrate." *Burke v. Town of Walpole*, 405 F.3d 66, 81 (1st Cir. 2005). To establish that officers submitted a warrant application with reckless disregard for the truth, the Plaintiff must show that the officers "in fact entertained serious doubts as to the truth of the allegations" or that the "circumstances evinc[ed] obvious reasons to doubt the veracity of the allegations" in the application. *U.S. v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (internal quotations omitted). For omissions of exculpatory evidence, "recklessness may be inferred where the omitted information was critical to the probable cause determination." *Golino v. New Haven,* 950 F.2d 864, 871 (2d Cir. 1991).

Applying these principles to the present case, the record simply does not contain evidence from which a reasonable factfinder could conclude that the officers violated Plaintiff's Fourth Amendment rights. There is no evidence that the officers entertained serious doubt as to the identity of the perpetrator at the time of the warrant application. Indeed, the officers each insist that they were—*and still are*—certain that Plaintiff was the perpetrator of the Honey Farms robbery. *See, e.g.*, Burgos Dep. 10:16-17:9; Bartley Dep. 24:5-14, 25:23-26:7; O'Rourke Dep. 6:16-20. Nor do the circumstances suggest obvious reasons to doubt the veracity of the officers' allegations. Their conclusion that Plaintiff is depicted in the surveillance video has a reasonably trustworthy basis: Officers Burgos and O'Rourke had worked with Plaintiff for several years and knew him well, *see* Burgos Dep. 6:19-8:9, O'Rourke Dep. 9:19-10:17, and Officer Bartley compared the surveillance video stills to WPD file photographs of Plaintiff and found them to match. *See* Bartley Dep. 23:18-24. Although the surveillance stills are somewhat grainy, they provide a clear enough picture of the perpetrator's face for a reasonable person to conclude that the robber bears a strong resemblance to the WPD file photos of Plaintiff. *See* Docket No. 88, Exh. 4; Docket No. 88, Exh. 8. This resemblance was affirmed not only by the officers, but by

7

the Superior Court judge and Plaintiff's own criminal defense attorney at Plaintiff's initial bail review hearing. *See* Docket No. 88, Exh. 11, at 2-3.

Plaintiff has not proffered any facts that would lead a reasonable juror to conclude otherwise. He does not allege that the officers acted with intent or malice in wrongfully accusing him of the robbery. To be sure, the record suggests that the criminal case against Plaintiff was dismissed because a video enhancement showed that the perpetrator had a tattoo on his right hand, a marking Plaintiff does not have. *See* Bartley Dep. 12:10-13:12. However, Plaintiff has not produced that video enhancement or any other evidence supporting the veracity of that claim. Although Plaintiffs' counsel questioned the officers about whether the perpetrator might have had a tattoo on his right hand, none of them stated that they saw a tattoo in the surveillance footage. In fact, Officers Bartley and O'Rourke were adamant that they did *not* see any tattoo, *see* Bartley Dep. 11:11-23, 12:18-13:9, O'Rourke Dep. 12:3-6, 12: 24-13:2, 25:8-15.

Further, although the warrant application did not include the store clerk's initial height description of 4'11", *see* Docket No. 88, Exh. 9, that fact was not critical to the probable cause determination because it was overcome by the other circumstances of Officer Bartley's investigation. Bartley's review of the surveillance video allowed him a second estimate at the perpetrator's height, *see, e.g.*, Bartley Dep. 10:10-19, and two of his fellow officers positively identified the perpetrator as Plaintiff, an individual they knew well. *See* Burgos Dep. 6:19-8:9, 20:7-13; O'Rourke Dep. 9:19-10:17. Officer Bartley then reviewed WPD file photos of Plaintiff and found them to match the images taken from the surveillance footage. *See* Bartley Dep. 23:13-24:14, 26:5-7. These circumstances are more than sufficient to establish probable cause. *See, e.g., Kennie v. White Plains Police Depatrment's Vice Control Unit*, 108 F.3d 1369 (2d Cir. 1997) (finding arrest to be "amply supported by probable cause" where officer identified suspect

8

from a surveillance photograph); *U.S. v. Ramos-Cruz,* 667 F.3d 487, 502-03 (4th Cir. 2012) (affirming finding of probable cause to search home where officer submitted warrant application based on a fellow officer's identification of the suspect from a photograph).

Finally, to the extent that Plaintiff offers the affidavit and expert report of Michael Peddell, it is simply not probative on the question of whether a Fourth Amendment violation occurred. Peddell opines that the officers should have taken further investigatory steps (such as taking fingerprints, interviewing witnesses, or conducting a line-up) to identify the perpetrator. *See* Docket No. 94, Exh. 8. But even if it is true that the officers could have done their job differently, that does not establish that they acted with reckless disregard at the time they submitted the warrant application. The Fourth Amendment analysis must be based on the circumstances known to the officers at the time, rather than in hindsight. *See Burke v. Town of Walpole*, 405 F.3d 66, 80 (1st Cir. 2005).

Viewed in the light most favorable to Plaintiff, the record does not contain evidence from which a reasonable juror could conclude that the officers acted with reckless disregard for the truth. Therefore, Plaintiff cannot establish a Fourth Amendment violation, and there is no material fact dispute that would preclude summary judgment on Plaintiff's § 1983 claim against the officers. Further, as Plaintiff has not raised a genuine and material fact dispute regarding a constitutional violation, he cannot succeed on the municipal liability claims against the City of Worcester and Police Chief Gemme. *See Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir. 1996) (holding that a municipality cannot be held liable under § 1983 for failure to train absent an underlying constitutional violation by one of its officers). Therefore, summary judgment is appropriate on Counts III and IV.

### Count I: False Imprisonment against Bartley, Burgos, O'Rourke

Count I asserts a claim against Officers Bartley, Burgos, and O'Rourke for false imprisonment. Under Massachusetts law, false imprisonment is the unlawful restraint of a person's freedom of movement by force or threats. *See Wax v. McGrath*, 255 Mass. 340, 342, 1151 N.E. 317 (1926). Courts in this District have stated that the tort requires a plaintiff to show the "(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." *Lucia v. City of Peabody*, 971 F. Supp. 2d 153, 170 (D. Mass. 2013). A police officer will not be liable for false imprisonment if he had a legal justification for the arrest, *see Rose v. Town of Concord*, 971 F. Supp. 47, 51 (D. Mass. 1997) (citing *Wax*, 255 Mass. at 342), and "[s]uch justification exists if the officer had probable cause to arrest the suspect." *Sietins v. Joseph*, 238 F. Supp. 2d 366, 381 (D. Mass. 2003).

It is undisputed that a warrant based on probable cause was issued by a clerk-magistrate prior to Plaintiff's arrest. As described above, Officers Bartley, Burgos, and O'Rourke did not act with reckless disregard for the truth in submitting the warrant application. Therefore, there was legal justification for Plaintiff's arrest and the officers cannot be held liable for false imprisonment. *See Sietins*, 238 F.3d at 381 (entering summary judgment on false imprisonment claim where police offers had probable cause to arrest the plaintiff); *Rose*, 971 F. Supp. at 51-52 (same). Officers Bartley, Burgos and O'Rourke are entitled to summary judgment on Count I.

### Count II: Negligence against City of Worcester

Count II asserts that the City of Worcester was negligent by (1) failing to investigate evidence that suggested Plaintiff was not the perpetrator of the armed robbery, and (2) failing to

10

properly supervise the officers responsible for Plaintiff's arrest. Defendants argue that the Massachusetts Tort Claims Act (MTCA) prohibits municipal liability in this case.

The MTCA provides that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." M.G.L. c. 258, § 2. However, § 10 of the MTCA sets forth several exceptions to this general rule. Section 10(b) is the discretionary function exception, and bars liability on:

> any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting with the scope of his office or employment, whether or not the discretion involved is abused.

M.G.L. c. 258, § 10(b). In *Sena v. Commonwealth*, the Massachusetts Supreme Judicial Court ("SJC") held that "the conduct of law enforcement officials in investigating potentially criminal conduct and in seeking warrants for the arrest of those whom they investigate are discretionary functions and therefore fall within the exception in § 10(b)." 417 Mass. 250, 257, 629 N.E.2d 986 (1994). The SJC noted, in dicta, that § 10(b) may not shield officers who violate officially established departmental procedures during their investigations, or those who recklessly misstate or omit relevant information in a warrant application. *Id.* at 257 n.5.

The Court agrees with Defendants that the MTCA bars Plaintiff's negligence claim. First, Plaintiff has not raised a material fact issue on the negligence claim as it pertains to the officers' investigation. There is no evidence in the record that the officers did not comply with WPD procedures during the investigation of the Honey Farms robbery. Although the Peddell report speculates that the conduct of Bartley, Burgos and O'Rourke may have violated proper investigative protocols, it does not identify a single WPD departmental procedure. In fact, the report expressly acknowledges that its conclusions are based on standards of *other* police

departments, because Peddell lacked access to the relevant WPD policies. *See* Docket No. 94, Exh. 8, at 5. The assertion that the officers violated official WPD procedures is the type of empty, speculative conclusion that courts must not credit. *See Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 136 (1st Cir. 2013) (observing that the non-moving party "cannot rely on speculation to avoid summary judgment"). Further, for the reasons stated above, the record is void of evidence that would establish a reckless omission of relevant information from the warrant application.

Second, to the extent that Plaintiff's negligence claim asserts that the City of Worcester failed to properly supervise the officers, it is also barred by the MTCA. Section 10(j) prohibits liability on:

> any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

M.G.L. c. 258 § 10(j). The SJC has made clear that this provision bars negligence actions based on failure to supervise. *See Bonnie W. v. Commonwealth*, 419 Mass. 122, 125-26, 643 N.E.2d 424 (1994). Such claims are "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance," and therefore fall within the net cast by § 10(j). *Ward v. City of Boston*, 367 F. Supp. 2d 7, 16 (D. Mass. 2005). Consequently, Plaintiff's claim for negligent supervision fails, and judgment will enter as a matter of law on Count II.

## **Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 86) is ***granted***.

SO ORDERED.

                                              ***/s/ Timothy S. Hillman***
                                              **TIMOTHY S. HILLMAN**
                                              **DISTRICT JUDGE**